UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**TIMOTHY M. KELLY AND
THERESA KELLY,**                                          Chapter 13
    Debtors                                            Case No. 12-15258-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court for determination is Sovereign Bank, N.A.'s Objection to Confirmation of the Chapter 13 plan filed by Timothy and Theresa Kelly (the "Debtors"). Sovereign Bank, N.A. ("Sovereign") holds a second mortgage on the Debtors' real estate at 325 Village Street, Medway, Massachusetts (the "Medway property"). The Debtors, through their Chapter 13 plan, provide for avoidance of the second mortgage in its entirety on the ground that Sovereign's claim is wholly unsecured.

The issue presented is the value of the Debtors' real estate, a three unit dwelling. If the value of the property is less than $277,333 the second mortgage is wholly unsecured and Sovereign's mortgage can be avoided. If the value is greater than that amount, then Sovereign holds a secured claim to the extent the value exceeds the amount owed to the first mortgagee.

**II. BACKGROUND**

The Debtors filed a voluntary Chapter 13 petition on June 20, 2012. They listed the Medway property on Schedule A with a value of $285,000. On Schedule D, they listed "Chase" as the holder of a first mortgage in the amount of $291,527, an amount exceeding their opinion of the value of the Medway property.

JP Morgan Chase Bank, N.A. as servicer for Deutsche Bank National Trust Co., as Trustee for FSAA Trust 2004-NC1, Mortgage Pass-Through Certificates, Series 2004-NC, filed a proof of claim in the sum of $277,333.18;[1] Sovereign filed a proof of claim in the sum of $139,581.19.[2]

The Debtors filed a Chapter 13 plan on July 6, 2012. Through their plan, the Debtors propose to make monthly payments of $76 for 60 months. In addition, the Debtors propose to pay Chase directly, avoid Sovereign's second mortgage, and treat Sovereign's claim as an unsecured claim. They state:

> The Debtors aver that the second mortgage on their principal residence is wholly unsecured and therefore is not subject to the antimodification provision of 11 U.S.C. § 1322(b)(2) and will be paid in accordance with the schedule of dividends to the general unsecured creditors. If this Plan is completed and the Debtors complete payment hereunder then the note and mortgage owed to this creditor shall be deemed extinguished and the recording of the Order of Confirmation and Discharge shall ave to discharge the mortgage. The Debtors will not continue monthly payments to this creditor but shall pay in accordance with this Plan.

The Debtors do not intend to pay a dividend to their unsecured creditors, whose claims total

---

[1] The note and mortgage identify the borrower as Theresa M. Angelo.

[2] The home equity line of credit agreement identifies Theresa M. Kelly as the borrower. Both debtors executed the mortgage to Sovereign.

2

approximately $250,000, excluding Sovereign's deficiency claims.

The Chapter 13 Trustee objected to the Debtors' Chatper 13 plan on the ground that the Debtors had failed to produce evidence of property value as "both parcels of real estate owned by Coombs Street, LLC." The Debtors responded by stating that they had provided the Chapter 13 Trustee "with evidence of real property values for both parcels of real estate owned by Coombs Street, LLC and evidence of current amount [sic] owed on any liens on Coombs Street, LLC real estate." The Trustee withdrew her objection.[3]

Sovereign objected to the Debtors' plan on the ground that it had a broker's price opinion valuing the property between $299,000 and $315,000.  It asked the Court to defer confirmation until the Medway property could be valued.

The Court treated Sovereign's objection as a contested matter and issued a pretrial order. On June 7, 2013, Sovereign filed a Motion for Summary Judgment seeking a determination that its second mortgage was partially secured. The Debtors opposed the Motion. On August 6, 2013, the Court heard the Motion and ruled that the Medway property would be valued at fair market value as of the date of the hearing on confirmation. The Court directed the parties to exchange updated appraisals by October 18, 2013.  The Court scheduled an evidentiary hearing for November 12, 2013, which it later rescheduled to December 5, 2013.

---

[3] On Schedule A, the Debtors listed "principal residence located at 325 Village Street, Medway, MA 02053." On Schedule B, they listed a 50% interest in Coombs Street LLC and ascribed it no value.  Each Debtors signed the mortgage in favor of Sovereign as "Owner." It is unclear from the existing record what property is owned by Coombs Street, LLC.

3

Case 12-15258    Doc 76    Filed 12/13/13    Entered 12/13/13 15:16:05    Desc Main
           Document      Page 4 of 10

**III. THE MOTION IN LIMINE**

The Court held an evidentiary hearing on December 5, 2013. At the commencement of the hearing, the Debtors' attorney made an oral motion in limine, followed by a written motion, seeking to bar Sovereign from introducing into evidence an updated appraisal report on the ground that it had not provided Debtors' counsel with an updated appraisal within the time directed by the Court in the order dated August 6, 2013, namely October 18, 2013. The Court heard argument and granted the motion, ruling that Sovereign's counsel failed to articulate any legitimate reason for the failure to comply with the order and the failure to update the appraisal, as well as to provide a copy of the updated appraisal to Debtors' attorney by October 18, 2013.  Sovereign's attorney conceded at the hearing that he did not contact the Debtors' attorney to obtain access to the Medway property until after the Court imposed deadline had expired.  Accordingly, the Court precluded Sovereign from introducing an appraisal report other than one dated November 6, 2012.

**IV. FACTS**

Based upon the testimony and documentary evidence the Court now makes the following findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

At the hearing, counsel to the Debtors and Sovereign stipulated that the first mortgage claim is $277,333.18 and the second mortgagee is owed $139,581.19.  In addition, the parties presented testimony by two licensed appraisers and introduced into evidence two appraisal reports.

As set forth in his appraisal report prepared for Sovereign, Mr. Andrew Dallin, a state licensed appraiser for the past 15 years, expressed the opinion that, as of the November 6,

2012, the Debtors' property had a fair market value of $300,000. He described the property as a three-unit rental property in which the Debtors occupy one unit. He noted that the property consists of a 34,000 square foot lot. He also noted that the property has a full basement, no attic, and vinyl siding.

The Debtors' property has a three car garage, whereas three of the comparable sales used by Mr. Dallin had only driveways for off street parking. Moreover, the Debtors' property has a porch and two of the comparable sales which he analyzed did not. Mr. Dallin adjusted for these differences, and his adjustments are appropriate. He did not, however, adjust for differences in the various towns, such as real estate tax rates and school quality.

Mr. Dallin primarily relied on the comparable sales approach methodology for valuation, but also considered the income approach to valuation. He used five comparable properties, two of which were two-family dwellings; four of the comparable sales he used were in neighboring towns, not Medway, due to the lack of comparable sales of three family properties in Medway. His comparable sales ranged in value from $250,000 to $399,000, although two properties were merely listed for sale and have not been sold. Mr. Dallin stated that the Medway property was in average condition and that no major repairs were necessary, although he observed that two of the units are dated. As noted, two of Mr. Dallin's comparable sales were listings at $392,900 and $399,000 and were unsupported by actual sales and there was no evidence as to how long those two properties have been on the market. Without explanation Mr. Dallin deducted a 6 percent adjustment from the listing price.

5

Mr. Michael Horrigan, the Debtors' appraiser, expressed the opinion that the fair market value of the Debtors' property was $260,000, as of October 1, 2013, a date closer in time to the valuation hearing.  He analyzed five properties, all of which were sales, although one sale was a distressed sale and one had damage due to torn out wiring and plumbing, thus eliminating them as reliable indicators of value.  His comparable sales ranged from $170,000 to $292,500.  Three of the five comparable sales were two-unit buildings, as opposed to the Debtors' property which contains three units.  He testified that the use of several two apartment buildings did not significantly affect his valuation.  He stated that it was more important to him to analyze sales in the same same town, rather than relying upon the size of the property, as in his experience buyers pick a neighborhood first and then choose the type of house.   Like Mr. Dallin, Mr. Horrigan made adjustments, up and down, for differences in the comparable sales in relation to the Debtors' property.

## V. LEGAL PRINCIPLES

The following legal principles are applicable to a determination of the issues in this case. The Debtors' mortgage is a modifiable loan within the meaning of 11 U.S.C. § 1322(b)(2) as it is a multi-family dwelling.  *See* Lomas Mortgage, Inc. v. Louis, 82 F. 3d 1 (1st Cir. 1996).[4]

---

[4] In Lomas Mortgage, the First Circuit held:

> [T]he antimodification provision of § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income-producing units. Because Lomas's security interest extends to the additional rental units of 221 Spring Street, the antimodification provision of § 1322(b)(2) does not apply to that interest, and bifurcation pursuant to § 506(a) is appropriate.

82 F.3d at 7 (footnote omitted).

Sovereign's counsel appears to misapprehend the modifiability of the loan, suggesting that the lien can be modified only if the claim is totally unsecured. This argument was considered and rejected by the First Circuit in <u>Lomas</u> and other courts in this circuit and elsewhere. *See* <u>In re Scarborough</u>, 461 F.3d 406, 414 (3d Cir. 2006) ("In our view, the plain language of § 1322(b)(2) equates the real property that collateralizes a mortgage with a debtor's principal residence. Where a creditor takes an interest in real property that is not the debtor's principal residence, such as property that will be used as income-generating rental property, the anti-modification provision does *not* apply.").

This Court uses a flexible approach in determining the appropriate date for valuation. *See* <u>In re SW Hotel Venture, LLC</u>, 460 B.R. 4, 29 (Bankr. D. Mass. 2011), *aff'd in part and rev'd in part,* 479 B.R. 210 (B.A.P. 1st Cir. 2012).[5] It is the view of this Court that the appropriate date for the valuation of real property for the purposes of determining the allowed amount of the secured claim in this case is the date of the hearing on confirmation of the Chapter 13

---

[5] In <u>SW Hotel Venture, LLC</u>, this Court stated:

The majority of courts utilize more flexible approaches than the courts in the decisions referenced above [*see, e.g.*, <u>Ford Motor Credit Co. v. Dobbins</u>, 35 F.3d 860, 870 (4th Cir.1994); <u>Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)</u>, 151 B.R. 931, 935–36 (B.A.P. 9th Cir.1993)] in determining secured status. Based upon the language of § 506(b) they look to the circumstances of the case and purpose of the valuation. <u>Toy King</u>, at 190. Adopting a "continuous valuation approach," a number of courts determine secured status at various times throughout the case, causing a fluctuation depending on payments or changing values. *See* <u>In re Addison Props. Ltd. P'ship</u>, 185 B.R. at 776 (citing <u>In re Union Meeting Partners</u>, 178 B.R. 664 (Bankr. E.D. Pa.1995); <u>In re Columbia Office Assocs. Ltd P'ship</u>, 175 B.R. 199 (Bankr. D. Md.1994)). Other courts, the majority, have endorsed a similar, case by case approach, but refuse to pick a specific point in time for the debt/value comparison, focusing instead on the matter before the court. *See, e.g.*, <u>In re T–H New Orleans Ltd. P'ship</u>, 116 F.3d at 798; <u>In re Southeastern Steel Co.</u>, No. 00–09225–W, 2001 WL 1804303 at *2 (Bankr.D.S.C. Dec. 7, 2001).

plan, as opposed to the date of the commencement of the bankruptcy case. *See* In re Cahill, No. 12-11666-BAH, 2013 WL 6229144 (Bankr. D. N.H. Dec. 2, 2013). *But see* TD Bank, N.A. Landry, 479 B.R. 1 (D. Mass. 2012). Moreover, where the Debtors propose to retain the real property, the Court utilizes the fair market value approach, as opposed to a liquidation or distressed value approach. *See* Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Savs. (In re Winthrop Old Farm Nurseries, Inc.), 50 F. 3d 72, 75-76 (1st Cir. 1995). Hypothetical sales costs are not deducted for the purpose of determining the extent of the secured claim. Taffi v. United States (In re Taffi), 96 F.3d 1190 (9th Cir. 1996), *cert. denied*, 521 U.S. 1103 (1997); In re Strever, 468 B.R. 776, 780 (Bankr. D.S.C. 2012) (citing Assocs. Commercial Corp. v. Rash, 520 U.S. 953 (1997)). *See also* Hernandez v. TCF Banking & Savings, 493 B.R. 46 (Bankr. N.D. Ill. 2013).

**VI. ANALYSIS**

The appraisal evidence submitted by both parties had strengths and weaknesses. The appraisers did not disagree on numerous facts. They agreed that the comparable sales approach is the best methodology for determining fair market value, but the comparable sales they employed were different. Both appraisers agreed that the real estate market in Medway is currently stable. Both appraisers used comparable sales in Medway and also analyzed sales in other neighboring towns due to the limited number of comparable sales within Medway. Both appraisers supported their opinions of value by using the income approach to valuation and by analyzing several comparable rental properties for similar units in the area. Neither expert's opinion contained any glaring errors.

Valuation is not an exact science and it is rare that any opinion of value is precisely accurate. Even though licensed, experienced appraisers are experts, to the extent the expert's opinions have flaws, the Court assigns more or less weight to one opinion than another. If both experts' opinions contain imperfect analysis, the Court will discount the expert's reliance on any inappropriate factor, and reach an independent conclusion of value based upon all of the evidence.

In the present case, the Court gives the Debtors' expert's opinion and appraisal slightly more weight than Sovereign's expert, although neither opinion was a perfectly accurate valuation. First, the Debtors' appraisal evidence, and the inspection and report, are closer in time to the valuation hearing than Sovereign's appraisal which was completed in November of 2012, over one year ago. Under industry standards, an appraisal that is over a year old is considered stale and not a current valuation, particularly as it does not account for any deterioration in the condition of the property. Secondly, the Debtors' appraiser analyzed actual sales and did not base his opinion on any listings, as did Sovereign's appraiser. The Court, however, does not accept as completely accurate the Debtors' appraiser's opinion of value. One of his comparable sales was a foreclosed property and, thus, not indicative of fair market value. The plumbing and wiring in another comparable sale had been removed. Finally, the Court observes that Mr. Horrigan's valuation was depressed by his use of three, two family units in Medway. These facts caused the Debtors' appraiser's opinion to be artificially low.

**VII. CONCLUSION**

Weighing the strengths and weaknesses of the opinions of value as expressed by the

9

expert appraisers, and recognizing that valuation is not an exact science, the Court finds that the fair market value of the Debtors' property for the purposes of Sovereign's secured claim and the Debtors' plan is $ $275,000. The Court determines that the Debtors may modify Sovereign's claim as it is not "secured only by a security interest in real property that is the debtor's principal residence," and that Sovereign's claim is totally unsecured.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 13, 2013